UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>      Post-Effective Date Debtors. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |
| MOHSIN Y. MEGHJI, LITIGATION ADMINISTRATOR, AS REPRESENTATIVE FOR THE POST-EFFECTIVE DATE DEBTORS,<br><br>      Plaintiff,<br>v.<br><br>CASLA REALTY LLC,<br><br>      Defendant. | Adv. Pro. 24-04002 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO TRANFER VENUE**

*A P P E A R A N C E S:*

JACOBS P.C.
*Attorneys for Defendant Casla Realty PR LLC*
595 Madison Avenue, 39 th Floor
New York, New York 10022
By:    Robert M. Sasloff, Esq.
         Wayne Greenwald, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for Plaintiff*
One Bryant Park
New York, New York 10036
By:    Mitchell P. Hurley, Esq.
         and
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
By:    Elizabeth D. Scott, Esq.
         Nicholas R. Lombardi, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Casla Realty LLC's ("Casla") Motion to Transfer Venue ("Motion," ECF Doc. # 14). Counsel to the Litigation Administrator for Celsius Network LLC ("Litigation Administrator" or "Plaintiff") filed a response. ("Response," ECF Doc. # 29). The Court heard argument on the Motion on December 12, 2024.

For the reasons explained below, the Motion is **DENIED.**

## I.   BACKGROUND

### A.  Underlying proceedings

On July 13, 2024, the Plaintiff filed a complaint against Casla. (ECF Doc. # 1.) Allegedly, former Celsius employee Jason Stone ("Stone") rented a house from Casla through his wholly-owned Puerto Rican LLC ("Home of Alpha" or "HoA") and transferred Celsius assets to pay for it. (*Id.* ¶ 1.) Stone sent 195 Ethereum[1] to Casla in December 2020, to pay for Stone's yearlong rent and security deposit for a lease at a Puerto Rico townhouse which combined to $126,000 in value. (*Id.* ¶ 2.) Specifically, Stone caused Celsius to make multiple transfers of Celsius assets (together, the "Casla Transfers") totaling 195 ETH into two wallets owned or controlled by Casla to pay for Stone's rent and security deposit. (*Id.* ¶ 23.) For Stone's security deposit, Stone transferred 15 ETH total from a Celsius account to Casla: 0.1 ETH into wallet 0x8372ecc11cd038cea333181d784f1ade569fc45f on December 22, 2020, and then 14.9 ETH into the same wallet on December 23, 2020. To pay Stone's rent, Stone transferred 180 ETH total from a Celsius wallet to Casla: 1 ETH on December 22, 2020 into

---

[1] This was meant to represent $121,000 in value, as this was the value of the base rent plus the security deposit, minus a $5,000 credit towards the renter's purchase and installation of a jacuzzi. (*Id.* para. 22.)

2

wallet 0x511cb1510FcEcD0D65feAdbc62c7155D3F015146, and then the remainder 179 ETH into the same wallet on December 23, 2020. (*Id.* ¶ 23.)

Following that payment, Stone found out that the townhouse was (allegedly) uninhabitable and in violation of a warranty of habitability which Casla had signed in the rental agreement (*id.* ¶ 21), but when alerted to the issues with the property, Casla refused to return the money Stone had sent to it, instead sequestering it into Binance accounts and preventing Stone from recovering the funds. (*Id.* ¶ 3.) Casla denies that the house was uninhabitable and that the true reason why Stone sought a refund was because Ethereum's value had doubled in between the time Stone paid the rent in Ethereum and when he complained about the property. (Motion at 5.) Allegedly, as soon as Casla found out that Stone became aware of the serious problems with the Property, Casla immediately transferred 180 Celsius ETH to a Binance account (wallet 0x3f5CE5FBFe3E9af3971dD833D26bA9b5C936f0bE) to hinder Celsius's recovery of the rent payment, and also transferred 15 Celsius ETH to another Binance account (wallet 0x61189Da79177950A7272c88c6058b96d4bcD6BE2) to hinder Celsius' recovery of the security deposit. (*Id.* ¶ 28.) Casla eventually refunded $68,375 to the LLC through which Stone was renting the townhouse ("HOA"). (*Id.* ¶ 29.) However, the money was returned in USD, even though Stone had paid in ETH. At the time of payment, the $68,375 was equivalent to approximately 41 ETH, far less than the 195 ETH paid by Celsius. (*Id.*)

On May 21, 2021, HoA sued Casla in the District Court for the District of Puerto Rico, seeking to nullify the rent agreement which HoA and Casla entered into and seeking damages as well. (Motion at 37–43.) The District of Puerto Rico dismissed the case with prejudice for lack of diversity jurisdiction. (*Id.* at 45–53.) HoA then sued Casla in state court in Puerto Rico on February 18, 2022, on the grounds that the lease agreement was null and void under the Civil

3

Code of Puerto Rico, and seeking damages. (*Id.* at 81–86.) HoA and Casla settled the state court case on June 10, 2022. (*Id.* at 87.) The settlement agreement has the following provision: "Upon the execution of this Agreement, the Puerto Rico Court of First Instance will issue its Judgment based on this Agreement and shall retain jurisdiction for purposes of enforcing this Agreement." (*Id.* at 88.) The settlement agreement provides that Casla will return a portion of the rental fee ($68,375) in dollars to HoA, and HoA agreed not to pursue recovery of the ETH transferred. (*Id.* at 8.) The settlement also releases Casla, HoA, and Stone (and their agents/employees/officers/directors/etc.) from liability arising from this rental agreement. The settlement agreement was signed by Jason Stone on behalf of HoA, and by a representative from Casla. (*Id.* at 89–90.)

This adversary proceeding is part of the larger Celsius bankruptcy proceeding. The Litigation Administrator for Celsius claims that Celsius and Stone were insolvent at the time of the transfers to Casla, and sued Casla on the grounds of constructive fraudulent transfer, unjust enrichment, conversion, and fraudulent inducement. (ECF Doc. # 1 ¶ 41–70.)

### B. Procedural history

The complaint was served on Casla on July 26, 2024. (ECF Doc. # 6.) Casla filed its first extension request on August 22, 2024, seeking to extend its response deadline from August 26 to September 9, 2024 (ECF Doc. # 8.) It filed another extension request, this time with the Litigation Administrator's consent, on August 27 (still seeking an extension from August 26 to September 9). (ECF Doc. # 11.) Casla filed its motion to transfer venue on September 9 (ECF Doc. # 14).

On October 10, Casla answered the Plaintiff's Complaint and raised defenses it styled as affirmative defenses: failure to state a claim, failure to join a necessary party, *res judicata*, the

4

opponent's being *in pari delicto*, failure to mitigate damages, lack of damages causation, unclean hands, contributory negligence, lack of subject matter jurisdiction in this Court, the fact that it is a good-faith transferee for value, waiver, estoppel, and double recovery in light of a settlement the Plaintiff reached with a necessary party. (ECF Doc. # 26.)

### C. Transfer motion

Casla requests that this Court transfer the case to state court in Puerto Rico or, in the alternative, to the U.S. Bankruptcy Court for the District of Puerto Rico. (Motion at 5.) Casla takes issue with what it calls the Litigation Administrator's "attempt[] to relitigate" what it views as already-settled issues governed by a settlement agreement, and argues that the settlement agreement requires all related disputes to be heard by the Puerto Rican state court which initially heard the case. (*Id.* at 8.) Casla argues that the same claims in the Complaint have already been litigated in Puerto Rico, and that a judgment was entered in Puerto Rico state court in that matter in June of 2022. (*Id.*) Celsius was not a party to the Puerto Rico action, and it was not a party to the settlement of that action.

Casla emphasizes the connections the case has to Puerto Rico: the lease agreement between Casla and Stone's (Puerto Rican) LLC concerns only Puerto Rican entities and is governed by Puerto Rican law (*id.* at 9-10); all witnesses (save for Stone) are in Puerto Rico (*id.* at 10); and all documentary evidence was "generated in Puerto Rico" (*id.* at 11). It also argues that Celsius has no business pursuing Casla as the underlying transactions were between HoA and Casla, not Celsius, and the mere fact that Stone withdrew assets from Celsius to pay Casla through HoA does not give Celsius a basis upon which to sue Casla. (*Id.* at 14-15.) Casla also argues that this is a non-core proceeding because the dispute between Casla and HoA is a "non-core, state law claim that does not in any way depend on the main bankruptcy . . . there is

5

absolutely no causal or contractual connection linking Casla to Celsius to even relate Casla to its bankruptcy . . . this case should be transferred to a Puerto Rico court for the filing of Casla's pleadings and the continuation of the proceedings, since Puerto Rico state law exclusively applies to the facts alleged in this Complaint and Defendant is being placed at an unfair disadvantage by being forced to litigate outside of its jurisdiction and where the entirety of the facts took place. The Puerto Rico courts, be it state or federal, are the proper venues to review, analyze and interpret Puerto Rico state law, the only applicable law to these facts." (*Id.* at 15.)

The Litigation Administrator, in turn, argues that (1) this Court has exclusive jurisdiction to hear the Litigation Administrator's claims, and transfer therefore is not permissible; (2) even if transfer were permitted, Casla has not met the "heavy burden" required to overcome the presumption favoring this Court's maintaining jurisdiction; and (3) the settlement agreement between HoA and Casla is inapplicable in this case. (Response at 1.)

The Litigation Administrator points to a provision in Celsius's confirmed Chapter 11 Plan regarding this Court's jurisdiction:

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code . . . .

Plan, Article XII (emphasis added).

The Plan then provides a list of twenty-one non-exhaustive examples of matters "arising out of, or related to, the Chapter 11 Cases and the Plan," and therefore subject to exclusive jurisdiction before this Court, including "any cases, controversies, suits, disputes, Causes of Action, or other matters that may arise in connection with the Recovery Causes of Action brought by the Litigation Administrator in the Bankruptcy Court," Article XII, No. 11, and "any

other matter not inconsistent with the Bankruptcy Code," *id*. No. 21. "Recovery Causes of Action" include avoidance actions; the Litigation Administrator describes the present action against Casla as an avoidance action, and therefore reads the Plan as providing this Court with continuing and exclusive jurisdiction over the action. (Response at 1–3.)

Even setting this Plan provision aside, the Litigation Administrator believes that Casla has not overcome the strong presumption in favor of this Court's maintaining jurisdiction over the case: not only is the presumption of validity of the plaintiff's choice of forum strengthened in bankruptcy cases, but Casla's arguments rest on a "fundamental misunderstanding of the nature" of the action. Since this is an avoidance action and not a contract dispute, New York is the most convenient venue because witnesses and experts related to Celsius's insolvency are located here, as is most of the evidence. This Court is immersed in the key issues in this litigation; and moving the litigation to Puerto Rico would impose an unnecessary financial burden on the debtor's estate. (*Id.* at 3–7.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1334(b), a district court has original jurisdiction to hear "all civil proceedings arising under title 11 or arising in or related to cases under title 11." "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The standard is the same for bankruptcy proceedings: "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *see also* FED. R. BANKR. P. 7087 ("On motion and after a hearing, the court

7

may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2).").

"The decision to transfer venue is within the discretion of the court based on 'an individualized, case-by-case consideration of convenience and fairness.'" *In re Northwest Airlines Corp.*, 384 B.R. 51, 60 (S.D.N.Y. 2008) (quoting *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990)). "The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence." *Manville*, 896 F.2d at 1390. "Under 28 U.S.C. § 1404(a), courts may consider the following non-exclusive factors in deciding whether a transfer is warranted: (1) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the relative means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight accorded to the plaintiff's choice of forum; and (8) judicial economy and the interests of justice." *Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013). The Second Circuit has consistently held that "a plaintiff's choice of forum is presumptively entitled to substantial deference." *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004); *accord Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000) (holding that "a plaintiff's choice of forum is entitled to substantial deference and should only be disturbed if the factors favoring the alternative forum are compelling"). In a bankruptcy proceeding, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *Manville*, 896 F.2d at 1391.

8

### III. DISCUSSION

Removal would not be proper in this case. The language of Celsius's Chapter 11 Plan gives this Court exclusive jurisdiction over all adversary proceedings which arise from the debtor's Chapter 11 case. (*See* ECF Doc. # 3972 at 212–14.)

Moreover, even absent the Plan language, the interests of justice and consideration for the convenience of the parties counsel in favor of retaining jurisdiction over this matter. First, this is an adversary proceeding in a bankruptcy case, establishing the presumption that this Court is the appropriate venue. Second, an analysis of the section 1404(a) factors shows that Casla has not overcome this presumption: The witnesses in this adversary proceeding—which will inevitably include Celsius's NY-based witnesses, given that a component of the claim turns on determining that Celsius was insolvent at the time of the transfers—will be spread between New York and Puerto Rico, certainly, but will not necessarily be concentrated in Puerto Rico. The same can be said for the documents in this case (and, in the era of electronic file transfers, this is hardly a consideration at any rate). The locus of operative facts may be in Puerto Rico, but we do not know where each individual was at the time of the Ethereum transfers, so that prong is neutral. Conservation of estate resources is essential in a bankruptcy proceeding and favors retaining venue of this adversary proceeding in this Court. This Court has deep knowledge of the bankruptcy law governing this adversary proceeding. In a bankruptcy, heavy weight is accorded to the plaintiff's choice of forum. And finally, given that this case arises from a chapter 11 case which unfolded here, and since this Court has institutional knowledge about the Debtor's assets, financial condition, and operations (which will be important in showing that Celsius was insolvent at the time of the transfer), judicial economy counsels in favor of keeping the case here.

9

## IV.    CONCLUSION

For the foregoing reasons, the Motion is **DENIED.**

**IT IS SO ORDERED.**

Dated:  December 12, 2024
       New York, New York

                              _Martin Glenn_
                            MARTIN GLENN
                    Chief United States Bankruptcy Judge